Nott, J.,
-delivered the opinion of the court:
A motion is made to refer these cases to a special commissioner. The motion is urged upon the ground that the hearing-will involve the examination of a mass of vouchers and accounts arising from certain contracts, so as to determine the respective rights of the numerous parties in interest, and will require much intricate arithmetical calculation, better done by an accountant than a court. It is opposed upon the ground that this court cannot part with any of its judicial discretion, nor delegate its quasi jury duties to a referee. The eases seem eminently proper to be referred to a competent commissioner, *80 but tbe objection requires an examination as to the power of the court to make such order of reference.
The act to establish a Court of Claims, Act 2ith February, 1855, (10 Sbat. L,, p. G12, § 3,) provides that“ the said court shall have authority * . * * to appoint commissioners to talce testimony to be used in the investigation of claims that may come before it.” The act amendatory thereof, Act 3d March, 18G3, (12 Stat. L., p. 703, § 4,) provides that11 it may appoint commissioners, and may generally exercise such powers as are necessary to carry out the powers herein granted to it.” There is no provision in either act requiring the hearing in the first instance to be before the judges, nor any which prescribes, regulates, or limits the mode of trial.
It is not apparent why Congress, in the original act, should have invested the court with power to appoint commissioners for a specified purpose, and in' the amendatory act have in-grafted upon the first a second power to appoint, unless it were for a different purpose. The purpose of the latter act is not expressed; the power imparted to the court is general; the commissioners authorized are not restricted to any prescribed duties. Moreover, the power to appoint is immediately coupled with the broad and sweeping authority to “ generally exercise such powers as are necessary to carry out the powers herein granted to it.” We must infer that the “ commissioners” authorized by the amendatory act are not the “ commissioners to talce testimony,” authorized by the original act; and that, on the contrary, being unrestricted to any specified duty, they may be appointed to perform any official service which in courts of law and equity is ever performed by commissioners.
That such was the intent of the legislative power may be inferred in the legislative circumstances surrounding the acts, as well as from the language of the latter statute. When the first act was passed, the Court of Claims was intrusted with the single duty of hearing and determining claims which were to be reported to and readjudicatcd by Congress. When the amendatory act was passed the court became invested with a new and enlarged j urisdiction, extending to counter-claims and set-offs in favor of the government; with the power of final adjudication; with authority to punish for contempt; and, generally, with all the attributes of a court. The subsequent statutes that have greatly added to the jurisdiction and duties *81 and labors of the court, were doubtless foreseen, one indeed passing on the same day with the amendatory act. It therefore became necessary that the powers and discretion of the court should be enlarged to meet the judicial requirements of the new ■duties. The least intelligent members of the legislative bodies must have known that the varied, and involved, and extended accounts of the nation would certainly bring into the court cases that could not possibly be investigated by five judges at a formal trial. Congress must also have known that a number of intricate and involved cases would so retard the administration of justice here that endless and vexatious delays would render the remedy hardly worth pursuing. Accordingly, we find in the statutes that while Congress on the one hand have ■carefully defined and limited the jurisdiction of the court, on the other they have committed the administration of that jurisdiction to the court with unlimited discretion and with the-expressed grant of all necessary powers. The subjects of adjudication the statutes carefully enumerate; the manner of adjudication they leave wholly unfettered.
The court alone can render judgments, and the court must be responsible for its judgments. The best method for attaining justice in its judgments, the court, in the silence of the legislature, must determine. If Congress had prescribed a •method of proceeding, it would be its duty to proceed according to that method, regardless of its defects or inconveniences; but when Congress have committed the discretion of its procedure to the court, it becomes the duty of the court to select that method which will be most just to all its suitors.
The subject brought before us by this motion has already been a subject of some consideration and solicitude; for the increased business of the court has caused to suitors increased harassments and delays, and calls for increased means and facilities. It may be that if ordinary cases were referred to special commissioners in the first instance, both to take the testimony and report the facts, the law of those cases would be more carefully considered and the result more speedily reached. And these references might go on during the vacation, so that ■at the opening of the new term a large number of new cases would have well-nigh ripened into judgment. The exceptions of the respective parties to the findings would direct the scrutiny of the court to the essential facts, and the conclusions of *82 the commissioner would reduce tbe arguments to tbe real points of legal controversy.
Of no case referred to a commissioner will the court lose responsibility or control. Tbe final bearing will still be before tbe court, and there eacb party will be entitled to be fully beard, and to present by bis exceptions any matter of wbicb be deems himself aggrieved, either as to tbe law or tbe fact. Tbe testimony and proofs must be returned with tbe report, and tbe court will look into them, so as to see whether any-finding is sustained by»- or is against tbe weight of evidence. Tbe arguments will be confined to tbe matters excepted to, and tbe cases can be set for bearing, when ready, upon any Monday of tbe term, without tbe delay of going upon tbe usual trial list. And to settle tbe practice more particularly, tbe court has reduced its decision to tbe following formal order:
It appearing that this action is at issue between tbe parties,, and that certain proofs and testimony have been taken, but that tbe case is not ready for final bearing, by reason of a defect of proof,- and it also appearing that tbe bearing of tbe case will, involve the examination of numerous vouchers, and tbe statement of an account:
Now, after hearing Thomas Wilson, esq., for tbe motion, and Assistant Attorney General Talbot, opposed:
Ordered, That tbe case be referred to Enoch Totten, esq., a special commissioner of this court, hereby appointed to take-such further proofs and testimony as may be necessary, and upon all tbe evidence to state an account between the parties, including tbe parties for whose use tbe suit is prosecuted, and also to report to tbe court tbe facts established by tbe evidence, with bis conclusions thereon.
And further ordered, That tbe commissioner return with bis report all tbe proofs and testimony, and that on tbe coming in and filing of such report, either party may file, at any time before final bearing, printed exceptions to any rnling or finding of tbe commissioner as to, either tbe law or tbe fact.
And further ordered, That the case may be set down for final bearing, upon tbe report of the commissioner and tbe proofs- and testimony, on any Monday of tbe term ten days after printed copies of tbe report and proofs shall have been filed.
And further ordered, That tbe fees and charges of the commissioner be paid by tbe claimant.